UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DESMOND AARON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-03290-JRS-MG |
| | ) |
| J. SURGUY C.O., | ) |
| | ) |
| Defendant. | ) |

**Order Denying Defendant's Motion for Summary Judgment**

Plaintiff Desmond Aaron, an inmate at Pendleton Correctional Facility ("PCF"), filed this civil rights action under 42 U.S.C. § 1983 alleging that the defendant used excessive force against him in violation of the Eighth Amendment.

The defendant seeks summary judgment arguing that the action should be dismissed because Mr. Aaron did not exhaust his administrative remedies. Mr. Aaron has responded in opposition to the motion for summary judgment, and the defendant has replied. Because the evidence shows that Mr. Aaron completed the grievance process, the motion for summary judgment is **denied**.

**I.     Summary Judgment Standard**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the

1

adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable factfinder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

## II.   Background

According to Mr. Aaron's complaint, on February 20, 2020, the defendant, Correctional Officer Surguy, called Mr. Aaron a racial slur and then pepper sprayed him "for no reason at all." Dkt. 2 at 3. He then attempted to put Mr. Aaron in a chokehold, but Mr. Aaron fled. Mr. Aaron was handcuffed by another officer and placed in segregation.

The Indiana Department of Correction ("IDOC") has an Offender Grievance Process ("the Grievance Process") that provides offenders with an opportunity to attempt to resolve grievances before filing suit in federal court. Dkt. 22-1 at ¶¶ 5−6. Offenders receive documentation on the Grievance Process during orientation, and a copy of the Offender Grievance policy is available in the PCF law library. *Id.* at ¶¶ 24–25.

The Grievance Process in effect at the time of the incident consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility warden or the warden's designee; and (3) a written appeal to the IDOC Grievance Manager. Dkt. 22-2 at 3. Exhaustion of the grievance

process requires an offender to timely complete all three steps. Dkt. 22-1 at ¶ 11. However, the policy manual also makes clear that inmates are only required to proceed to steps two and three when they are dissatisfied with previous responses. Dkt. 22-2 at 11−12.

Christina Conyers is the grievance specialist at PCF. Dkt. 22-1 at ¶ 2. She oversees the Grievance Process and has access to grievance records at PCF. *Id.* at ¶ 3.

### a. Evidence Submitted in Support of Defendant's Motion for Summary Judgment

Ms. Conyers reviewed Mr. Aaron's grievance records and testified that Mr. Aaron did not submit a formal appeal after the denial of his initial grievance. *Id.* at ¶ 29. In support, she cited Mr. Aaron's grievance log, which states that the appeal/level reached for the grievance in this matter was "Formal Grievance" received on March 11, 2020. Dkt. 22-3 at 2.

The defendant did not submit any of Mr. Aaron's grievance records related to the incident upon filing the motion for summary judgment.

### b. Evidence Submitted by Mr. Aaron

In response, Mr. Aaron submitted the grievance forms related to this incident. Dkt. 25-1. He submitted an offender grievance form filed on March 11, 2020. Dkt. 25-1 at 1. Ms. Conyers denied the grievance on March 17. *Id.* Mr. Aaron then submitted a grievance appeal which was stamped received on March 19. *Id.* at 2. Mr. Aaron describes the incident and then states, "For you to just listen to his side of the story *without the proper investigation being done* then you denie my grievance shows that your being bias towards me because Im a inmate and he is a C.O. if what he said was true I would have gotten a conduct report!" *Id.* (errors in original). The response states, "My staff have reviewed the surveillance on this incident. Available footage does show conclusive evidence that the incident report is inaccurate. I will refer this to facility

3

investigators[;] however at this time there is no further remedy." *Id.* Mr. Aaron checked a box stating "Agree with facility appeal response," signed the form, and dated it April 19, 2020. *Id.*

### c. Additional Evidence Submitted by Defendant

In reply, the defendant submitted the grievance documents related to this incident. Dkt. 30-1. The defendant also submitted a second affidavit by Ms. Conyers. Dkt. 30-2. Ms. Conyers testified that Mr. Aaron *did* submit an appeal to the warden, and the warden responded on April 6. Dkt. 30-2 at ¶¶ 8, 10. However, Ms. Conyers has no record that Mr. Aaron returned the appeal form with the check mark stating he agreed with the warden's response, and she has not seen the signed and dated appeal form.[1] *Id.* at ¶¶ 13−14. Ms. Conyers testified that if Mr. Aaron had submitted the appeal form indicating he agreed with the warden, she would have sent it to IDOC Central Officer, where the grievance would have been processed. *Id.* at ¶ 15.

### III. Discussion

The Prison Litigation Reform Act ("PLRA") provides, "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see Porter v. Nussle*, 534 U.S. 516, 524−25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed

---

[1] Mr. Aaron disputes that he failed to return the appeal form. Dkt. 33 at 2. He also points out that Ms. Conyers refers to "MCF" (presumably Miami Correctional Facility) in several places in her affidavit despite these events occurring at Pendleton Correctional Facility. *Id.* This is not the only typo in this affidavit; the affidavit states it was executed on August 30, 2020, instead of 2021. Dkt. 30-2 at 3. Noting the misstatements made in Ms. Conyer's first affidavit, the defendant is reminded of his obligation to submit truthful and accurate information in support of his motion for summary judgment.

administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006) (citation omitted).

Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90. "To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). Exhaustion is an affirmative defense, and the defendant bears the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

But a prisoner who has gained all the relief that is available through the prison's administrative process need not take further action to satisfy the PLRA's exhaustion requirement—even if the administrative process includes additional steps that the prisoner has not yet completed.

> Once a prisoner has won *all the relief that is available* under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases. When there is no possibility of any further relief, the prisoner's duty to exhaust available remedies is complete.

*Thornton v. Snyder*, 428 F.3d 690, 695–96 (7th Cir. 2005) (quoting *Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) (*abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007))) (emphasis added). The notion that a prisoner "should have appealed to higher channels after receiving the relief he requested in his grievances is not only counter-intuitive, but it is not required by the PLRA." *Id.* at 697.

The undisputed evidence shows that Mr. Aaron completed the Grievance Process. In the grievance appeal, he complained that prison staff failed to conduct a proper investigation.

5

Dkt. 25-1 at 2. In response, the warden said that he referred this incident to facility investigators because the video evidence was inconsistent with the incident report. *Id.* The warden also said that no further remedy was available. *Id.* Because Mr. Aaron achieved the relief he sought through the grievance process—that is, a proper investigation—he did not need to file an additional appeal.

In his reply, the defendant focuses only on whether Mr. Aaron returned his appeal form to Ms. Conyers so she could send the appeal form to the Central Office to complete the grievance process. But that is not required. Because Mr. Aaron received his requested relief at the first appeal, he was not required to proceed to the next step. *Thornton*, 428 F.3d at 695−96. And this logical conclusion is supported by the form itself, which instructs the grievance specialist to send the form to the next level only when the inmate *disagrees* with the facility response:

> Please check the appropriate box and return this form to the Facility Grievance Specialist.
> ☑ Agree with facility appeal response.
> ☐ Disagree with facility appeal response. Send appeal to Department Offender Grievance Manager.
> Signature of offender: [signature]
> Date signed (month, day, year): 4-19-2020

Dkt. 25-1 at 2. Accordingly, the defendants' motion for summary judgment must be denied.

## IV. Conclusion

The defendant's motion for summary judgment, dkt. [22], is **denied**. The evidence shows that Mr. Aaron exhausted his available administrative remedies before he filed this lawsuit. Therefore, pursuant to Federal Rule of Civil Procedure 56(f)(1), the Court gives the defendant notice of its intent to grant summary judgment in Mr. Aaron's favor on the exhaustion defense. The defendant **shall have through December 6, 2021**, in which to respond to the Court's proposal and either (a) show cause why summary judgment should not be entered in Mr. Aaron's favor on this issue, or (b) withdraw his affirmative defense of exhaustion.

**IT IS SO ORDERED.**

Date:   11/17/2021

_JAMES R. SWEENEY II, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

DESMOND AARON
999062
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Conner Ross Dickerson
INDIANA ATTORNEY GENERAL
conner.dickerson@atg.in.gov